# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DORIS COLE, | ) |
| Plaintiff, | ) |
| vs. | ) Case No.: **3:08-cv-217-PMF** |
| THE KROGER CO., *et al.*, | ) |
| Defendants, | ) |
| and | ) |
| THE KROGER CO., | ) |
| Third Party Plaintiff, | ) |
| vs. | ) |
| PHILLIP M. KIMMEL TRUST, *et al.*, | ) |
| Third Party Defendants. | ) |

## MEMORANDUM AND ORDER

**FRAZIER, Magistrate Judge:**

Before the Court are third party plaintiff Kroger Co.'s motion for summary judgment (Doc. 166) and the third party defendants' motion for summary judgment (Doc. 170). For the following reasons, third party plaintiff Kroger Co.'s motion for summary judgment (Doc. 166) is **GRANTED** and the third party defendants' motion for summary judgment (Doc. 170) is **GRANTED in part and DENIED in part**.

A. **Factual Background**

This action arises out of a June 3, 2006 incident in Carbondale, Illinois when Doris Cole allegedly exited a Kroger Grocery Store located in the West Park Plaza strip mall carrying bags of groceries, and subsequently stepped on a slick, sloping, uneven area, and fell. She claimed

1

that the area was painted with a yellow "slippery paint." This area was painted in September, 2005, approximately 9 months prior to the alleged incident. Cole alleged, generally, that Kroger and Bromont Property Management, LLC ("Bromont") owned, operated, and controlled or had a duty to own, operate, and control the property where the accident occurred. She further alleged that Kroger's and Bromont's breach of duty proximately caused her to sustain injuries.

Plaintiff Cole's claim was ultimately settled on March 15, 2011 for a total payment of $30,000. Doc. 172 at 5 ¶ 28; Doc. 176 at 3 ¶ 28. Of the total payment to Cole, Kroger contributed $5,000, and the insurer for the remaining defendants contributed the remainder. *See id*. As a result of the settlement, Cole's claim against was dismissed with prejudice. Doc. 165. However, Kroger's third-party claim against four named third party defendants remained. *Id.*

In its amended third party complaint (Doc. 93), Kroger alleges that if it is found liable to Cole for the accident, Kroger is nonetheless entitled to contractual indemnification by BP Carbondale, LLC. ("BP Carbondale"), among others, for any damages Cole is awarded. Doc. 93 at 3 (Count I). Further, Kroger alleges that it is entitled to contribution from BP Carbondale, among others, under a common law theory of premises liability. *Id.* (Count II). One third-party defendant, the Phillip M. Kimmel Trust ("the Kimmel Trust"), has been voluntarily dismissed from the third party action. *See* Doc. 127.

### A. Indemnity Claim

The third party plaintiff and defendants have now filed cross-motions for summary judgment (Docs. 166, 170) on the remaining indemnity claim (Count I). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). Because jurisdiction is based on diversity (28 U.S.C. ¶ 1332) and the

2

relevant facts of this case occurred in Illinois, substantive Illinois law applies to the instant third party claim for indemnification. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

"An indemnity agreement is an agreement whereby the indemnitor agrees to protect the indemnitee from claims asserted against the indemnitee by third persons." *Magnus v. Lutheran General Health Care System*, 601 N.E.2d 907, 915 (Ill. App. Ct., 1st Dist. 1992). In Illinois, "an indemnity agreement is a contract and is subject to contract interpretation rules." *Virginia Sur. Co., Inc. v. Northern Ins. Company of New York*, 866 N.E.2d 149, 153 (Ill. 2007) (citation omitted). "The cardinal rule is to give effect to the parties' intent, which is to be discerned from the contract language", and "if the contract language is unambiguous, it should be given its plain and ordinary meaning." *Id*. (citation omitted). "Finally, indemnity agreements are not favored in Illinois and thus are strictly construed against the indemnitee." *Church v. General Motors Corp.*, 74 F.3d 795, 799 (7th Cir. 1996) (citations omitted).

In its cross-motion for summary judgment (Doc. 166) against the third party defendants in this case, Kroger relies strictly on the terms of the lease for its argument that at least one of the third party defendants were required to indemnify them for Plaintiff Cole's injuries in this case. The parties agree that at the time of the incident involving Cole, Kroger was leasing the property on which its store was located from third party defendant BP Carbondale, which accepted assignment of the ground lease in 2004 subject its prior terms, provisions, and conditions. Doc. 168 at 2 ¶ 4, 5; Doc. 177 at 2 ¶ 4, 5. Because the evidence demonstrates that BP Carbondale is the landlord under the lease and any duty to indemnify Kroger would be assigned to BP Carbondale only, there can be no existing claim for indemnification against third party defendants Bromont Developments, LLC, Bromont Development Group, LLC, and Bromont Investments, Inc. Therefore, the third party defendants' cross-motion for summary judgment

(Doc. 170) will be **GRANTED** with respect to those four defendants on Kroger's indemnity claim (Count I).

In its cross-motion for summary judgment (Doc. 170), BP Carbondale argues that the lease did not contain clear and unequivocal language requiring BP Carbondale to indemnify Kroger for Kroger's own negligence, as required by Illinois law. This argument is misplaced because there was no finding of negligence with regard to Kroger in this case. It is true that Illinois law requires that an indemnity contract will not be construed as indemnifying one against his own negligence, unless such a construction is required by the clear and explicit language of the contract or such intention is expressed in unequivocal terms. *Buenz v. Frontline Transp. Co.*, 822 N.E.2d 525, 533 (Ill. 2008) (citing *Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp.*, 70 N.E.2d 604 (Ill. 1946)). Here, however, Cole's negligence claim against Kroger was settled out of court and voluntarily dismissed. *See* Doc. 165.

Furthermore, it would be improper for the Court to infer negligence on behalf of Kroger based only upon the fact that Cole chose to make Kroger, the tenant, rather than BP Carbondale, the landlord, a defendant in her negligence case and the fact that Kroger chose to protect its interests by settling the negligence claim instead of incurring further legal expense by defending the claim through trial. The Court cannot now determine, after the claim has been settled out of court, that Kroger was negligent. To do so would violate policy principles encouraging settlement negotiations. *See* FED. R. EVID. 408; *see also Zurich American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 689 (7th 2005) (providing that the primary policy reason for excluding settlement communications is that the law favors out-of-court settlements, and allowing offers of compromise to be used as admissions of liability might chill voluntary efforts at dispute resolution and citing as example *Perzinski v. Chevron Chem. Co.*, 503 F.2d 654, 658 (7th Cir. 1974)). For purposes of Kroger's indemnification claim against BP Carbondale, the

issue is whether the terms of the lease actually required indemnification.

"Under Illinois law, … the starting point of any contract analysis is the language of the contract itself. If the language unambiguously answers the question at issue, the inquiry is over." *Church*, 74 F.3d at 799 (citations omitted). The relevant portions of the lease in this case provide as follows:

> "… All that portion ... not covered by buildings is to be common area for joint use of all tenants, customers, invitees and employees. … Landlord agrees, at its own expense, to maintain all Common Area in good repair, to keep such area clean, to remove snow and ice therefrom, to keep such area lighted during hours of darkness when the demised premises are open for business and to keep the parking area properly striped to assist in the orderly parking of cars. Any claim for damage to property and any claim arising from or out of the injury or death of any person while on the Common Area shall be the responsibility of Landlord, and Landlord agrees to carry ample Public Liability and Property Damage insurance to protect Landlord and Tenant properly and adequately against such claims."
>
> Doc. 166-4 at 1.
>
> "Landlord and Tenant agree to hold the other party harmless from any and all claims which may arise from, on, in, or about the demised premises when such claims arise out of or are caused in whole or in part by a defective, dangerous, or unsafe condition of the premises, equipment, fixtures or appurtenance required by law or the terms thereof to be maintained in good repair by Landlord or Tenant, as the case may be."
>
> Doc. 166-4 at 3.

It is clear from a plain language reading of the terms of the contract that:

1) Kroger and BP Carbondale intended to indemnify one another from claims arising out of dangerous or unsafe conditions of the premises to be maintained in good repair by either the BP Carbondale or Kroger, as the case may be;
2) The "common area" included the entire premises that is not covered by buildings;
3) BP Carbondale was responsible for claims occurring on the common area; and
4) BP Carbondale was required to carry ample insurance to protect both Kroger and BP Carbondale for claims occurring on the common area.

5

There is no disagreement that Cole's injuries occurred outside of the building (Doc. 168 at 2 ¶ 1; Doc. 177 at 1 ¶ 1) and therefore, the common area. As such, BP Carbondale was responsible under the terms of the lease for injury claims occurring in the common area.

### B. Bad Faith and Fair Dealing

In its cross-motion for summary judgment (Doc. 170), BP Carbondale contends that principles of fair dealing should prevent the Court from requiring that BP Carbondale reimburse Kroger the amount Kroger voluntarily agreed to contribute toward a joint settlement of Cole's negligence claim. "[A]n indemnitee owes its indemnitor a duty of good faith and fair dealing." *U.S. Fidelity and Guar. Co. v. Klein Corp.*, 558 N.E.2d 1047, 1050 (Ill. App. Ct., 1st Dist. 1990) (citing *Nogacz v. Procter & Gamble Manufacturing Co.*, 347 N.E.2d 112 (Ill. App. Ct., 1st Dist. 1976)). In this case, Travelers Insurance Company ("Travelers") was the insurer for all defendants besides Kroger in Cole's negligence lawsuit. Travelers was also the insurer for all of the third party defendants. According to BP Carbondale, principles of fair dealing were violated when Kroger voluntarily agreed to contribute money towards a joint settlement of Cole's claim because Kroger had knowledge that Travelers was the insurer of all defendants in the negligence claim and of BP Carbondale in the third party indemnification claim. With this knowledge in hand, Kroger then demanded the money it contributed toward the joint settlement back from BP Carbondale.

Considering all of the facts, the Court cannot conclude that Kroger acted in bad faith or violated principles of fair dealing when it contributed money toward a joint settlement and subsequently asked for reimbursement pursuant to an indemnity agreement. As the Court noted, *supra*, Cole chose to sue Kroger, the tenant, rather than BP Carbondale, the landlord. The terms of the lease required BP Carbondale to indemnify Kroger against claims occurring in the common area. The Court finds that Kroger acted responsibly when it agreed to contribute money

6

toward a joint settlement of Cole's negligence claim. The sum of money contributed was not unreasonable in light of the potentially enormous financial risk to Kroger (and BP Carbondale by indemnity) of defending the lawsuit through trial. Kroger was protecting its own interests, as well as the interests of BP Carbondale, when it chose to settle the claim out of court for a relatively small sum of money. Based on the facts before it, the Court does not find BP Carbondale's argument persuasive.

### C. Attorney Fees

Kroger and BP Carbondale disagree as to whether attorney fees can be recovered in this case. The defendants argue that the lease does not specifically provide for attorney fees or litigation expenses. However, under Illinois law, an exception to the so-called "American Rule" generally barring the recovery of attorney's fees, absent a statute or contractual provision providing for such recovery, exists where the wrongful acts of a defendant involve the plaintiff in litigation with third parties or place him in such relation with others as to make it necessary to incur expenses to protect his interest. *Fednav Intern. Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 840 (7th Cir. 2010) (citing *Ritter v. Ritter*, 46 N.E.2d 41, 44 (Ill. 1943). "[T]he theory behind this exception is that a tortfeasor should be held responsible for all of the natural and proximate consequences of his actions." *Id.* (citations omitted).

While attorney fees may be recoverable under Illinois law in this situation, Kroger did not include these consequential damages allegations in its amended third-party complaint (Doc. 93). As a result, an award of attorney fees would be improper. Kroger's amended third party complaint prays only for indemnification for "the damages alleged by Ms. Cole." *See* Doc. 93 at 3 ¶ 13. The complaint contains no allegation that the third party defendants' wrongful acts involved it in litigation with third parties or placed it in such relation to others that it incurred

7

expenses protecting its interest.[1] Even under the liberal federal notice pleading standards, the Court cannot apply the exception to the general rule disallowing attorney fees. *See, e.g., Fednav*, 624 F.3d at 840 (declining to apply the exception to the general rule disallowing award of attorney fees when the complaint did not include allegations that the defendant's wrongful acts involved it in litigation with third parties or placed it in such relation to others that it incurred expenses protecting its interest).

---

[1] Granted, it can be inferred from the existence of a third party complaint that the third party defendants' actions placed it in litigation with third parties. However, the third party amended complaint still lacks allegations that Kroger incurred litigation expenses protecting its interests and, therefore, fails to place the third party defendants on notice that the third party plaintiff is seeking recovery of those specific damages.

## CONCLUSION

For the forgoing reasons, third party plaintiff Kroger Co.'s motion for summary judgment (Doc. 166) is **GRANTED** and the third party defendants' motion for summary judgment (Doc. 170) is **GRANTED in part and DENIED in part.** The Clerk of the Court is **DIRECTED** to enter judgment for Kroger, Co. on Count I of its amended third party complaint for indemnification against BP Carbondale in the amount of five-thousand dollars ($5,000) for damages incurred by Kroger in settling the negligence claim against it, which BP Carbondable was required, by contract, to indemnify. The Clerk of the Court is further **DIRECTED** to enter judgment in favor of third party defendants Bromont Developments, LLC, Bromont Development Group, LLC, and Bromont Investments, Inc. on Count I of its amended third party complaint and against Kroger Co. for indemnification. Having found in favor of Kroger Co. on Count I of the amended third party complaint, Count II of the amended third party complaint for contribution is necessarily **DISMISSED** as moot. This case is closed.

SO ORDERED

DATED: <u>May 24, 2011.</u>

><i>/s/ Philip M. Frazier</i>
>PHILIP M. FRAZIER
>UNITED STATES MAGISTRATE JUDGE